Nicky Jatana (SBN 197682)
Andrea F Oxman (SBN 252646)
Sehreen Ladak (SBN 2307895)
JACKSON LEWIS P.C.
725 South Fugueroa Street, Suite 2500
Los Angeles, CA 90017-5408
Telephone: (213) 689-0404
Facsimile: (213) 689-0430
Nicky.jatana@jacksonlewis.com
Andrea.oxman@jacksonlewis.com
Sehreen.ladak@jacksonlewis.com

Attorneys for Defendants
ProBuild Company, LLC dba Dixieline Lumber & Home Centers;
Builders FirstSource-Dallas, LLC; and Builders FirstSource, Inc.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OTINA SENGVONG, on behalf of himself, and all others similarly situated,<br>Plaintiff,<br>vs.<br>PROBUILD COMPANY LLC, a Delaware limited liability company dba DIXIELINE LUMBER & HOME CENTERS, DIXIELINE TRUSS YARD, DIXIELINE CLASSIC COLLECTIONS, DIXIELINE HOME CENTERS; BUILDERS FIRSTSOURCE-DALLAS, LLC, a Delaware limited liability company; BUILDERS FIRSTSOURCE, INC., a Delaware corporation; and DOES 1 through 50, inclusive,<br>Defendants. | Case No.: **'19CV2231 MMA JLB**<br><br>**DEFENDANTS PROBUILD COMPANY, LLC DBA DIXIELINE LUMBER & HOME CENTERS; BUILDERS FIRSTSOURCE-DALLAS, LLC; and BUILDERS FIRSTSOURCE, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION PURSUANT TO 28 U.S.C. §§ 1332(a) AND (d) (DIVERSITY AND CAFA)**<br><br>(Filed concurrently with Civil Case Cover Sheet; Notice of Interested Parties; Declarations of John Foley and Andrea F. Oxman; and Corporate Disclosure Statement) |

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA:**

**PLEASE TAKE NOTICE** that Defendants ProBuild Company, LLC dba Dixieline Lumber & Home Centers ("ProBuild Company"); Builders FirstSource-Dallas, LLC ("Builders FirstSource-Dallas"); and Builders FirstSource, Inc. ("Builders FirstSource") (collectively, "Defendants") hereby invoke this Court's jurisdiction

1

pursuant to 28 U.S.C. §§ 1332(a) and (d), 1441(a) and (b), 1446, and 1453 and remove this action from the Superior Court of California for the County of San Diego on the basis of diversity jurisdiction under 28 U.S.C. § 1332(a) and/or under the provisions of the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).

## SERVICE AND PLEADINGS FILED IN STATE COURT

1. Plaintiff Otina Sengvong ("Plaintiff") filed an unverified Class Action Complaint against Defendants on October 15, 2019 in the Superior Court of the State of California, County of San Diego entitled *Otina Sengvong v. ProBuild Company, LLC, et al.* Case No. 37-2019-00054729 (the "Complaint"). [1]

2. In the Complaint, Plaintiff asserts eight causes of action against Defendants for: (1) Failure to Provide Meal Periods (Lab. Code §§ 226.7, 512 and 1198), (2) Failure to Provide Rest Breaks (Lab. Code §§ 226.7 and 1198), (3) Failure to Compensate For All Hours Worked (Lab. Code §§ 510, 1194, 1197 and 1198), (4) Failure to Indemnify (Lab. Code §§ 1198 and 2802), (5) Failure to Provide Accurately Written Wage Statements (Lab. Code § 226) (6) Waiting Time Penalties (Lab. Code §§ 201-203), (7) Unfair Competition (Bus. & Prof. Code §§ 17200, *et seq.*), and (8) Civil Penalties under the Private Attorney General Act ("PAGA") (Lab. Code §§ 2698, *et. seq.*).

3. Defendants have not yet been formally served with the Complaint but have agreed to accept service of Plaintiff's Complaint and related court documents via notice and acknowledgment of receipt. A copy of the Complaint is attached as **Exhibit A** to the Declaration of Andrea F. Oxman ("Oxman Decl.") submitted herewith.

4. The Summons, Civil Case Cover Sheet, Notice of Case Assignment and Alternative Dispute Resolution Information are attached as **Exhibit B** to Ms. Oxman's Declaration submitted herewith.

///

---

[1] Plaintiff also improperly identified Dixieline Truss Yard, Dixieline Classic Collections and Dixieline Home Centers, Inc. as dbas in this matter. Dixieline Lumber & Home Centers is the only proper dba of ProBuild Company, LLC. See Declaration of John Foley, ¶ 7, fn. 1.

5.  Prior to the filing of Defendants' Notice of Removal, Defendants' counsel reviewed the San Diego County Superior Court's online docket regarding the above-captioned action.  Based on Defendants' counsel's review of the docket, and to the best of Defendants' counsel's knowledge, the foregoing Complaint contained in Exhibit **A** and the pleadings and documents contained in Exhibit **B** to the Declaration of Andrea F. Oxman constitute all of the process, pleadings, orders, and other documents received by Defendants and/or on filed in the State Court Action in San Diego County Superior Court.  *See* Oxman Decl., ¶ 3.

## TIMELINESS OF REMOVAL

6.  Though Defendants have not been formally served with the Complaint, they have received a copy of the Complaint.  Accordingly, this Notice of Removal is deemed to have been filed been filed within thirty (30) days after service.  *See Murphy Bros., Inc. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 353 (1999) (actual service of process is the official trigger for responsive action by a named defendant, as opposed to receipt of complaint through other means).  "[I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."  28 U.S.C. § 1446(b)(3).  This Notice of Removal is therefore filed timely within the time period provided by 28 U.S.C. § 1446(b).

## NOTICE TO ALL PARTIES AND STATE COURT

7.  In accordance with 28 U.S.C. section 1446(d), the undersigned counsel certifies that a copy of this Notice of Removal and all supporting papers will be promptly served on Plaintiff's counsel and filed with the Clerk of the San Diego County Superior Court.  Therefore, all procedural requirements under 28 U.S.C. § 1446 have been satisfied.

/ / /

/ / /

3

DEFENDANTS' NOTICE OF
REMOVAL OF ACTION
CASE NO.

## VENUE IS PROPER

8. Venue of this action lies in the United States District Court for the Southern District of California pursuant to 28 U.S.C. §§ 1441 *et seq.* and 1391(a) because this is the judicial district of this Court in which the action arose and Plaintiff alleges (a) he performed work in the County of San Diego, and (b) Defendants maintain offices, transact business and/or have agents in the County of San Diego. *See* Complaint, ¶¶ 5-6.

## DIVERSITY JURISDICTION – 28 U.S.C. § 1332(a)
### Complete Diversity of Citizenship Exists Between the Parties

9. Diversity jurisdiction exists where there is diversity of citizenship between the parties at the time the lawsuit is filed. *Grupo Dataflux v. Atlas Global Group, LP*, 541 U.S. 567, 571 (2004). Defendants properly may remove the Complaint on the basis of diversity of citizenship jurisdiction pursuant to 28 U.S.C. § 1332(a) because complete diversity of citizenship exists between the parties.

10. Plaintiff is a citizen of California. For diversity purposes, an individual is a "citizen" of the State in which he or she is domiciled. *See Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088 (9th Cir. 1983). Defendants are informed and believe that Plaintiff at all relevant times was and is domiciled in California. *See* Complaint, ¶ 6. Plaintiff admits he was employed by Defendants in San Diego county. *See* Complaint, ¶ 6.

11. A corporation is a citizen of any state where it is incorporated and of the state where it has its principal place of business. 28 U.S.C. § 1332(c). Defendant Builders FirstSource, is a Delaware corporation. See Declaration of John Foley ("Foley Decl.") submitted herewith, ¶ 4.

12. The state of Texas is where all of Builders FirstSource's primary executive, administrative, financial, and management functions are conducted and where the high-level officers direct, control, and coordinate the corporation's activities. Foley Decl., ¶ 5.

13. A limited liability company is a citizen of any state of which a member of the company is a citizen." *Johnson v. Columbia Props. Anchorage, LP.*, 437 F. 3d 894 899 (9th Cir. 2006).

14. Defendant ProBuild Company is a limited liability company formed in the state of Delaware. Foley Decl., ¶ 7. All of ProBuild Company's members reside in Texas. Foley Decl., ¶ 7. Accordingly, Defendant ProBuild Company is a citizen of Texas.

15. Builders FirstSource-Dallas is a limited liability company formed in the state of Delaware. Foley Decl., ¶ 8. All of Builders FirstSource-Dallas' members reside in Texas. Foley Decl., ¶ 8. Accordingly, Defendant Builders FirstSource-Dallas is a citizen of Texas.

16. Plaintiff admits Defendants are all entities organized and existing under the laws of Delaware. Complaint, ¶¶ 7-9.

17. The state of Texas is where all of Builders FirstSource's primary executive, administrative, financial, and management functions are conducted and where the high level officers direct, control, and coordinate the corporation's activities. Foley Decl., ¶ 5.

18. The state of Texas is also where all ProBuild Company's and Builders FirstSource-Dallas' members reside. Foley Decl., ¶¶ 7-8.

19. Applying the "nerve center" test articulated in *The Hertz Corporation v. Friend*, 130 S. Ct. 1181, 1192 (2010), Builders FirstSource is a citizen of Delaware and Texas because Texas is the state where Builders FirstSource's primary executive, administrative, financial, and management functions are conducted and where the high level officers direct, control, and coordinate the corporation's activities – i.e., the principal place of business of Builders FirstSource.

20. Similarly, and pursuant to *Johnson,* Defendants ProBuild Company and Builders FirstSource-Dallas are both citizens of Texas because that is the state in which all their members reside.

21. The presence of Doe defendants has no bearing on the diversity with respect to removal. 28 U.S.C. § 1441(a) ("For purposes of removal under this Chapter, the citizenship of defendants used under a fictitious name shall be disregarded.").

///

22.     Accordingly, complete diversity exists between Plaintiff, a citizen of California, and Defendants, citizens of Delaware and Texas.

### The $75,000 Amount in Controversy Requirement Is Satisfied

23.     This Action also meets the amount in controversy requirement for removal based on diversity jurisdiction. 28 U.S.C. section 1332(a) authorizes the removal of cases in which there is diversity of citizenship between the parties and the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

24.     In determining whether the amount in controversy exceeds $75,000.00, the Court must presume Plaintiff will prevail on his claims. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F.Supp.2d 993, 1001 (C.D. Cal. 2002), citing *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1096 (11th Cir. 1994) (the amount in controversy analysis presumes "plaintiff prevails on liability") and *Angus v. Shiley, Inc.*, 989 F.2d 142, 146 (3rd Cir. 1993) ("the amount in controversy is not measured by the low end of an open-ended claim, but rather by reasonable reading of the value of the rights being litigated"). Moreover, the facts and arguments set forth herein appropriately may be considered in determining whether the jurisdictional amount in controversy is satisfied. *Cohn v. Petsmart, Inc.,* 281 F.3d 837, 840, n.1 (9th Cir. 2002), citing *Willingham v. Morgan*, 395 U.S. 402, 407 n.3 (1969).

25.     The amount in controversy may include general and special compensatory damages and attorneys' fees recoverable by statute. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998); *Goldberg v. CPC Int'l, Inc.*, 678 F.2d 1365, 1367, cert denied, 459 U.S. 945 (9th Cir. 1982) (attorneys' fees may be taken into account to determine jurisdictional amount). The Court may examine the nature of the action and the relief sought, including attorneys' fees. *See, e.g., Simmons v. PCR Technology*, 209 F.Supp.2d 1029, 1035 (N.D. Cal. 2002) (attorneys' fees in individual employment discrimination cases often exceed damages). The Ninth Circuit has made clear that statutory attorneys' fees are included as a basis for determining the jurisdictional amount in controversy. *See Galt*, 142 F.3d at 1155-56. In determining whether the amount in

1  controversy meets the jurisdictional minimum, attorneys' fees are calculable beyond the
2  time of removal. *Simmons*, 209 F.Supp. at 1035.

3        26.    Without admitting Plaintiff is entitled to recover any damages whatsoever or
4  that Defendants are liable to Plaintiff in any way, Defendants can plausibly allege the
5  amount in controversy in this action will exceed $75,000.00. Where, as here, a plaintiff's
6  state court complaint is silent as to the amount of damages claimed, the removing
7  defendant need establish only that it is more probable than not that the plaintiff's claims
8  exceed the jurisdictional minimum. *Guglielmino v. McKee Foods, Corp.*, 506 F.3d 696,
9  699 (9th Cir. 2007); *Sanchez v. Monumental Life Ins. Co.*, 95 F.3d 856, 860-61 (9th Cir.
10 1996).

11       27.    Here, Plaintiff's allegations in the Complaint demonstrate the amount in
12 controversy exceeds $75,000, the jurisdictional requirement of this Court. Plaintiff was
13 employed by Defendants from January 25, 2018 through February 6, 2019 and worked
14 approximately 53 workweeks during this time. Foley Decl., ¶ 11. Plaintiff's most recent
15 hourly rate was $14.00 per hour. Foley Decl., ¶ 11.

16       1.    Plaintiff alleges during this time frame:
17           a.    he was not provided proper rest and meal periods and was not paid
18               premium wages for the missed periods. (Complaint, ¶ 25);
19           b.    he was required to work over five and ten hours per day and was not
20               provided proper meal periods. (Complaint, ¶ 26)
21           c.    he was not paid minimum, regular or overtime wages for the hours
22               worked. (Complaint, ¶ 27);
23           d.    he was not paid for off-the-clock work Plaintiff was performing or
24               pay premium wages for any days with missed meal or rest periods;
25               (Complaint, ¶ 28);
26           e.    he was not reimbursed for his work-related expenses. (Complaint, ¶
27               29);
28 ///

7

      f.   he was not paid all wages owed upon the termination of his employment (Complaint, ¶ 31G).

2. Plaintiff alleges that as a result of the foregoing, he is entitled to recover:
   a. unpaid straight time wages (Complaint, Prayer for Relief at ¶ D);
   b. unpaid overtime wages and double wages (Complaint, Prayer for Relief at ¶ D);
   c. premium wages (Complaint, Prayer for Relief at ¶ E);
   d. statutory penalties; (Complaint, Prayer for Relief at ¶ F);
   e. civil penalties; (Complaint, Prayer for Relief at ¶ G);
   f. actual damages; (Complaint, Prayer for Relief at ¶ I);
   g. restitution (Complaint, Prayer for Relief at ¶ J);
   h. pre-judgment interest; (Complaint, Prayer for Relief at ¶ K);
   i. costs of suit; (Complaint, Prayer for Relief at ¶ L); and
   j. reasonable attorneys' fees (Complaint, Prayer for Relief at ¶ M);

28. Thus, although Plaintiff's Complaint is devoid of any specific factual assertions pertaining to the frequency of Defendants' alleged Labor Code violations, conservatively assuming Plaintiff alleges he worked one hour of unpaid straight time per week and one hour of unpaid overtime per week, and conservatively assuming Plaintiff alleges he missed required meal breaks per 55% of the time and required rest breaks 40% of the time[2], the amount in controversy is at least **$8,925**, not including liquidated damages.[3]

///

---

[2] Plaintiff alleges he was not provided duty-free rest periods during "**most**" of his workdays due to lack of relief and poor scheduling. Complaint, ¶ 51 (emphasis added).

[3] 1 hour straight time/week x $14.00/hour x 53 workweeks = $742.00 alleged unpaid straight time
1 hour overtime/week x ($14.00/hour x 1.5) x 53 workweeks = $1,113.00 alleged unpaid overtime
(53 workweeks x 5 days/workweek) x .55 x $14.00/hour = $2,040.50 alleged meal premiums
(53 workweeks x 5 days/workweek) x .45 x $14.00/hour = $1,669.50 alleged rest premiums
$14.00/hour x 8 hours/day x 30 days= $3,360.00 alleged waiting time penalties
$742 + $1,113.00 + $2,040.50 + $1,669.50 + $3,360.00 = $8,925

29. In addition, while Plaintiff seeks an unspecified amount of attorneys' fees, such fees may also be taken into account to determine jurisdictional amounts, if a statute authorizes fees to a successful litigant. *Goldberg v. C.P.C. International, Inc.,* 678 F.2d 1365, 1367 (9th Cir. 1982); *Galt G/S v. JSS Scandinavia,* 142 F.3d 1150, 1155-1156 (9th Cir. 1998). *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700 (9th Cir. 2007) ("[w]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy"); *Simmons v. PCR Tech.,* 209 F. Supp. 2d 1029, 1035 (N.D. Cal. 2002). "Where the law entitles the prevailing plaintiff to recover reasonable attorney fees, a reasonable estimate of fees likely to be incurred to resolution is part of the benefit permissibly sought by the plaintiff and thus contributes to the amount in controversy." *Brady v. Mercedes-Benz USA, Inc.* (N.D. Cal. 2002) 243 F.Supp2d 1004, 1011; *Celestino v. Renal Advantage, Inc.* (N.D. Cal. 2007) 2007 U.S. Dist. LEXIS 33827, *11 ("the amount in controversy includes not only damages accrued up to the time of removal, but also a reasonable assessment of damages likely to be accrued after the time of removal").

30. Thus, the Court may examine the nature of the action and the relief sought and take judicial notice of attorney's fee awards in similar cases. *See, e.g., Simmons v. PCR Technology*, 209 F.Supp.2d 1029, 1035 (N.D. Cal. 2002) (noting attorneys' fees in individual employment discrimination cases often exceed damages, and holding that "while attorneys' fees alone would not necessarily exceed $75,000, when viewed in combination with alleged compensatory, punitive, and emotional distress damages [related to the plaintiff's discrimination claim], the jurisdictional minimum is clearly satisfied). Furthermore, such fees are calculable beyond the time of removal. *Simmons*, 209 F. Supp. 2d at 1035.

31. At the minimal rate of $250 per hour, Plaintiff would reach the jurisdictional threshold of $75,000 in just 300 hours. *Tiffany v. O'Reilly Auto. Stores, Inc.*, 2013 U.S. Dist. LEXIS 130082 at *9-10 (E.D. Cal. Sept. 10, 2013) (estimating future attorney's fees using rate of $250 per hour). As such, Plaintiff's attorney's fees alone will exceed $75,000

1 if the case proceeds to trial. Indeed, Plaintiff's counsel will likely exceed 300 hours well before trial given the likely hours that will be required for Plaintiff's counsel to prepare for, brief, and argue Plaintiff's anticipated motion for class action certification.

32. In sum, Plaintiff's potential recovery under the facts as alleged in his Complaint exceeds the amount in controversy. It is more likely than not that Plaintiff's claims exceed $75,000 and it cannot be said to a legal certainty that Plaintiff would not be entitled to recover the jurisdictional amount. *See Anthony v. Security Pacific Financial Services, Inc.*, 75 F.3d 311, 315 (7th Cir. 1996); *Watson v. Blankenship*, 20 F.3d 383, 386-87 (10th Cir. 1994). Therefore, the claims alleged, and recovery requested in Plaintiff's Complaint demonstrate the amount in controversy in this case exceeds the requirements under 28 U.S.C. §1332(a).

## **CLASS ACTION FAIRNESS ACT – 28 U.S.C. § 1332(d) –**

33. A defendant has a right to remove a state court action to a federal district court where the district has original jurisdiction over the action. 28 U.S.C. § 1441(a).

34. Pursuant to the Class Action Fairness Act ("CAFA"), "[t]he district courts shall have original jurisdiction over any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant . . . ." 28 U.S.C. § 1332 (d)(2)(A). The district courts have original jurisdiction where the proposed class involves 100 or more members or where the primary defendants are not States, State Officials, or other governmental entities. 28 U.S.C. § 1332(d)(5).

### **Diversity of Citizenship Under CAFA**

35. Under CAFA, diversity of citizenship is met when **any member of the putative class** is a citizen of a state different from any defendant. 28 U.S.C. § 1332 (d)(2)(a). Citizenship of the parties is determined by their citizenship status at the commencement of the action. 28 U.S.C. § 1332(d)(7). Here, as set forth in paragraphs 9

///

36. through 22 above, complete diversity exists between Plaintiff, a citizen of California, and Defendants, citizens of Delaware and Texas.

37. Moreover, Plaintiff purports to represent a class comprised of "[a]ll persons Defendants employed in California as non-exempt, hourly employees, including but not limited to material handlers, and comparable positions, at any time during the period four years prior to the filling of this action and ending on the date that final judgment is entered in this action." Complaint, ¶15. Accordingly, the Court can presume for purposes of diversity under CAFA that at least one member of the putative class is a citizen of the State of California based on the facts alleged in the Complaint.

38. Based on the foregoing, the minimal diversity required under CAFA is satisfied.

## Amount in Controversy Under CAFA

39. CAFA authorizes the removal of class action cases where the amount in controversy for all class members exceeds $5,000,000. 28 U.S.C. § 1332(d)(2). Where a plaintiff's complaint is silent as to whether the amount in controversy is less than CAFA's jurisdictional threshold of $5,000,000, "'a defendant's notice of removal need includes only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold,' and need not contain evidentiary submissions." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015), citing *Dart Cherokee Basin Operating Co. v. Owens*, 135 S.Ct. 547, 554 (2014).

40. A plaintiff's failure to specify in the complaint the total amount of damages sought does not deprive this Court of jurisdiction. *See e.g., White v. J.C. Penney Life Ins. Co.*, 861 F.Supp. 25, 26 (S.D. W.Va. 1994) (a defendant may remove a suit to federal court notwithstanding the failure of plaintiff to plead a specific dollar amount in controversy; if the rules were otherwise, "any plaintiff could avoid removal simply by declining . . . to place a specific dollar value upon its claim.").

41. The removing defendant need only establish that it is more probable than not that the plaintiff's claim exceeds the jurisdictional minimum. *Guglielmino v. McKee*

*Foods, Corp.*, 506 F.3d 696, 699 (9th Cir. 2007); *Sanchez v. Monumental Life Ins. Co.*, 95 F.3d 856, 860-61 (9th Cir. 1996).

42. Here, Plaintiff makes no allegation as to the total amount in controversy for his claims. Oxman Decl., ¶ 2, Ex. A. Defendants hereby allege that, based on the claims in the Complaint, the number of putative class members and the damages alleged by Plaintiff, it is clear that the amount in controversy exceeds $5,000,000, exclusive of interests and costs.

43. In measuring the amount in controversy, a court must assume that the plaintiff will prevail on each of his/her claims. *Roth v. Comerica Bank* (C.D. Cal. 2010) 799 F. Supp. 2d 1107, 1117 ("The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaints, not what a defendant will actually owe." (quotation omitted)).

44. Without admitting Plaintiff or the putative class members are entitled to recover any damages whatsoever or that Defendants are liable to Plaintiff or the putative class members in any way, Defendants can plausibly allege the amount in controversy under CAFA in this action will exceed $5,000,000, exclusive of interests and costs.

45. Plaintiff brings his Complaint on behalf of "[a]ll persons Defendants employed in California as non-exempt, hourly employees, including but not limited to material handlers, and comparable positions, at any time during the period four years prior to the filling of this action and ending on the date that final judgment is entered in this action". Complaint, ¶15.

46. ProBuild Company has approximately 404 non-exempt, hourly part-time employees that performed work in California during the putative class period – October 15, 2015 through the present.[4] Foley Decl., ¶ 13. In evaluating Plaintiff's allegations as to just this subset of the putative class, Defendants demonstrate that they easily satisfy CAFA's amount in controversy requirement, as further detailed below.

---

[4] Of the three entity Defendants named in this action, ProBuild Company is the only entity that has non-exempt employees which perform work or have performed work during the putative class period in California. Foley Decl., ¶ 12.

47. **First and Second Causes of Action for Failure to Provide Required Meal and Rest Breaks:** Plaintiff alleges "Defendants failed to provide Plaintiff with all required meal periods" and "maintained a policy, practice, or a lack of a policy which resulted in Defendants not providing the Class Members with all meal periods." Complaint, ¶ 39. Plaintiff further alleges Defendants often did not provide Plaintiff and the Class Members with all their duty-free meal periods" and, even "if Defendants provided Plaintiff and Class Members with a meal period, it was after they had already worked more than five (5) hours." Complaint, ¶ 39.

48. Plaintiff further claims Defendants often did not provide Plaintiff and Class Members with all their duty-free rest breaks" and that "Defendants also failed to provide Plaintiff and Class Members with a third rest period when they worked in excess of ten hours in a workday. Defendants either provided no breaks or five-minute breaks to Plaintiff and Class Members." Complaint, ¶ 51.

49. ProBuild Company's approximately 404 part-time non-exempt, hourly employees worked approximately 21,600 workweeks in California during the putative class period – October 15, 2015 through the present. Foley Decl., ¶ 15. The average hourly rate of pay for ProBuild Company's current non-exempt, hourly employees in the putative class is approximately $18.30. Foley Decl., ¶ 13. Conservatively assuming Plaintiff alleges a 55% meal break violation rate, this claim seeks approximately **$1,087,020.00** in unpaid meal break premiums for only ProBuild Company's part-time employees in the putative class.[5] Conservatively assuming Plaintiff alleges a 45% rest break violation rate, this claim seeks approximately **$889,380.00** in unpaid rest break premiums for ProBuild Company's part-time employees in the putative class.[6]

50. **Third Cause of Action for Failure to Pay Employees All Wages for All Hours Worked:** Plaintiff alleges Defendants failed to pay Plaintiff and other Class Members minimum, regular or overtime wages for the work it required or permitted them

---

[5] (21,600 workweeks x 5 days/workweek) x .55 x $18.30/hour = $1,087,020.00
[6] (21,600 workweeks x 5 days/workweek) x .45 x $18.30/hour = $889,380.00

to perform during off-the-clock meal periods, before clocking in, and after clocking out." Complaint, ¶ 69. Further, Plaintiff alleges Defendants failed to pay all overtime compensation to Plaintiff and other Class Members for hours worked in excess of eight hours per day" and that Defendants "failed to pay all overtime compensation to Plaintiff and other Class Members for hours worked in excess of 40 hours per week." Complaint, ¶ 69.

51. Plaintiff claims that "[a]s a result of Defendants' unlawful conduct, Plaintiff and the Class Members have suffered damages…to the extent they were not paid the full amount of wages earned each pay period during the applicable limitations period." Complaint, ¶ 71. Lastly, Plaintiff, on behalf of himself and the Class, seeks damages and/or restitution for all earned wages which Defendants failed to pay them at the correct rates of pay, interest thereon, costs of suit and reasonable attorney's fee s pursuant to [the] California Labor Code." Complaint, ¶ 72.

52. Conservatively assuming Plaintiff alleges he and the putative class members each worked 2 hours of unpaid "straight-time" per week, this claim seeks approximately **$790,560.00** in unpaid straight-time wages as to ProBuild Company's part-time employees in the putative class.[7] Conservatively assuming Plaintiff alleges he and the putative class members each worked 2 hour of unpaid overtime per week, this claim seeks approximately **$1,185,840.00** in unpaid overtime wages to ProBuild Company's part-time employees in the putative class.[8]

53. **Fourth Cause of Action for Failure to Indemnify:** Plaintiff alleges Defendants required Plaintiff and the Class Members to incur certain business expenses in the course of performing their duties, such as expenses associated with the purchase of tools to perform their jobs, including but not limited to gloves and tape measures… [and] failed to reimburse Plaintiff and the Class Members for these expenses." Complaint, ¶ 79. Plaintiff claims he and the Class Members are entitled to "reimbursement for all

---

[7] 21,600 workweeks x 2 hour alleged unpaid straight time/week x $18.30/hour = $790,560.00
[8] 21,600 workweeks x 2 hour alleged unpaid overtime/week x ($18.30/hour x 1.5) = $1,185,840.00

necessary expenditures and losses and interests thereon, owing to them within four years of filing of the complaint until the entry of judgment." Complaint, ¶ 81.  Based on ProBuild Company's payroll records, there are approximately 404 part-time non-exempt, hourly employees, who worked approximately 21,600 workweeks in California during the putative class period.. Assuming each of these putative class members is owed only $20.00 in reimbursement (For a one-time purchase of gloves and tape measures), this claim would seek approximately **$8,080.00** in reimbursement, plus interest.

54. **Fifth Cause of Action for Failure to Provide Accurate, Written Wage Statements:** Plaintiff alleges Defendants "failed to record the time Plaintiff and the Class spent working off-the-clock during their rest and meal periods and changed their time records to state that Plaintiff and the Class Members were not working at this time." Complaint, ¶ 89.  Plaintiff claims, as a result of Defendants' knowing and intentional failure to provide Plaintiff and Class Members with accurate wage statements, Defendants violated Labor Code section 226 and that Plaintiff and the Class are entitled to recover the greater of actual damages, or penalties of fifty dollars ($50) for the initial pay period in which a violation of California Labor Code occurred and one hundred dollars ($100) for each subsequent violation, not to exceed an aggregate penalty of four thousand dollars ($4,000.00) per Class Member. Complaint, ¶¶ 89-92.  If Plaintiff can demonstrate he and the Class Members are entitled to the maximum amount of damages ($4,000.00 per Class Member x 404 part-time putative class members), this claim would purport to seek **$1,616,000.00** for just a portion of the putative class. More conservatively, though, assuming Plaintiff can demonstrate each of the 404 part-time putative class members were to be entitled to only 2 violations ($50.00 for the initial violation and $100.00 for the subsequent violation), this claim purports to seek, at the minimum, **$60,600.00** in damages for ProBuild Company's 404 part-time employees that are members of the putative class.

///

///

15

DEFENDANTS' NOTICE OF
REMOVAL OF ACTION
CASE NO.

55. **Sixth Cause of Action for Waiting Time Penalties:** Plaintiff alleges Defendants failed to pay him and the Class Members all wages earned and unpaid prior to termination and that Plaintiff and the Class Members seek waiting time penalties in amounts subject to proof not to exceed 30 days of waiting time penalties for each Class Member. Complaint, ¶¶ 97-101.

56. California law provides, California Labor Code section 203 are subject to a three-year statute of limitations period. *Pineda v. Bank of America, N.A.,* (2010) 50 Cal. 4th 1389, 1398. Based on ProBuild Company's payroll records, there are approximately 239 individuals who were employed as part-time non-exempt hourly employees, including but not limited to material handlers, and comparable positions with Defendants and whose employment relationships ended between October 15, 2016 and the present. Foley Decl., ¶ 14. The Class Members earned an average of $18.30 per hour. Thus, based on Plaintiff's allegations, this claim seeks **$524,844.00** in Labor Code § 203 penalties.[9] Accordingly, not including statutory attorneys' fees, the amount in controversy based on Plaintiff's allegations on behalf of himself and part-time employees that are members of the putative class is in excess of **$4,546,324.00**.[10]

57. **Statutory Attorneys' Fees:** Plaintiff also seeks statutorily authorized attorneys' fees. Complaint, ¶¶ 72, 73, 82, 92, 107, Prayer for Relief at ¶ M. Statutorily authorized attorneys' fees may be included in determining the amount in controversy for removal purposes. *Galt G/S v. JSS Scandinavia* (9th Cir. 1998) 142 F.3d 1150, 1155-56. Attorneys' fees of 25% percent of damages have been approved in the Southern District of California. *See e.g., Velazquez v. Int'l Marine & Indus. Applicators, LLC*, 2018 U.S. Dist. LEXIS 21884 at *25-26 (S.D. Cal. 2018); *see also Espinosa v. Cal. Coll. of San Diego, Inc.*, 2018 U.S. Dist. LEXIS 60106 at *26-27 (S.D. Cal. 2018) (noting "[t]he Ninth Circuit has held that 25% of the gross settlement amount is the benchmark for

---

[9] $18.30/hour x 4 hours/day x 30 days x 239 putative separated Class Members = $524,844.00

[10] $1,087,020.00 + $889,380.00 + $790,560.00 + $1,185,840.00 + $8,080.00 + $60,600.00 + $524,844.00 = $4,546,324.00

attorneys' fees awarded under the percentage-of-the-fund method"). Here, 25% percent of the damages calculated above results in attorneys' fees of approximately 1,136,581.00.[11]

58. The total amount placed in controversy by Plaintiff's Complaint as discussed above, which does not include all claims and remedies pled much less the entire putative class (which would include full time and seasonal non-exempt hourly employees in California, in addition to the part-time employees discussed above), exceeds the jurisdictional minimum amount required under CAFA. Indeed, just as to ProBuild Company's part-time, non-exempt hourly employees, there is plausibly **$5,682,905.00** in controversy.[12]

## NUMEROSITY

59. CAFA also provides that the district courts shall not have jurisdiction over actions where "the number of members of all proposed plaintiff classes in the aggregate is less than 100." 28 U.S.C. § 1332(d)(5).

60. Here, Plaintiff defines the putative class as "[a]ll persons Defendants employed in California as non-exempt, hourly employees, including but not limited to material handlers, and comparable positions, at any time during the period four years prior to the filling of this action and ending on the date that final judgment is entered in this action." Complaint, ¶15. Plaintiff claims, while he does not know "the exact number of class members… [he] is informed and believes that the actual number exceeds the minimum required for numerosity under California law." Complaint, ¶17.

61. During the putative class period, ProBuild Company has employed approximately 404 part-time, non-exempt hourly employees who have performed work in California. Foley Decl., ¶ 13. Thus, the numerosity requirement under CAFA has been met.

/ / /

---

[11] ($4,546,324.00) x .25 = $1,136,581.00
[12] $4,546,324.00 + $1,136,581 = $5,682,905.00

17

1    WHEREFORE, Defendants removes the above-entitled action now pending in the
2 Superior Court of the State of California for the County of San Diego to this Court.

4 DATED: November 22, 2019                JACKSON LEWIS P.C.

                                          /s/ Andrea F. Oxman
                                    By: _____
                                          Nicky Jatana
                                          Andrea F. Oxman
                                          Sehreen Ladak

                                          Attorney for Defendants
                                          ProBuild Company, LLC dba Dixieline
                                          Lumber & Home Centers, Builders
                                          FirstSource-Dallas, LLC and Builders
                                          FirstSource, Inc.

4820-1223-1340, v. 1

18