1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| OTINA SENGVONG, on behalf of himself, and all others similarly situated, | Case No. 3:19cv2231-MMA-JLB |
| Plaintiff, | **ORDER RE: PLAINTIFF'S UNOPPOSED MOTIONS FOR FINAL APPROVAL OF CLASS SETTLEMENT, ATTORNEYS' FEES AND COSTS, AND CLASS REPRESENTATIVE INCENTIVE AWARD** |
| vs. | |
| PROBUILD COMPANY LLC, et al., | |
| Defendants. | [Doc. Nos. 49, 52] |

Otina Sengvong ("Plaintiff") brings this putative wage and hour class action (the "Action") against Defendants Probuild Company, LLC, et al. ("Defendants").  Plaintiff moves for final approval of a class settlement pursuant to Federal Rule of Civil Procedure 23(e) and for an award of attorneys' fees and costs pursuant to Rule 23(h), as well as a class representative incentive payment.  *See* Doc. Nos. 49, 52.  Defendants do not oppose Plaintiff's motions and the Court preliminarily approved the class settlement.  *See* Doc. No. 48.  The Court held a final approval hearing on these matters pursuant to Federal Rule of Civil Procedure 23(e)(2).  *See* Doc. No. 55.  For the reasons set forth below, the Court **GRANTS** Plaintiff's motion for final approval of the class settlement and **GRANTS** in substantial part Plaintiff's motion for attorneys' fees, costs, and an incentive award.

1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## BACKGROUND

Defendants are suppliers of structural and related building products for new residential construction, including lumber, windows, pre-hung doors, and other general construction tools and supplies.  In California, Defendants operate 15 retail locations. Plaintiff resides in San Diego, California.  Defendants first employed Plaintiff on or about January 25, 2018 to work as a materials handler at their Dixieline Lumber & Home Centers in San Diego, California.  *See* Doc. No. 1-2 at 7.[1]  Plaintiff continuously worked for Defendants from the time of his hire until approximately February 6, 2019, when his employment ended.  *See id.*

On August 5, 2019, Plaintiff on behalf of himself and other aggrieved employees, sent a written notice by certified mail to the California Labor and Workforce Development Agency ("LWDA") and Defendants of the specific California Labor Code provisions to have been allegedly violated by the Defendants.  *See id.* at 28.  On October 15, 2019, Plaintiff filed a putative class action complaint in the Superior Court of the State of California for the County of San Diego against the Defendants alleging the following causes of action: (1) Failure to provide meals periods; (2) Failure to provide rest periods; (3) Failure to compensate for all hours worked; (4) Failure to Indemnify; (5) Failure to provide accurate written wage statements; (6) Waiting time penalties; (7) Unfair competition; and (7) Civil Penalties.  *See id.* at 10-23.

On November 25, 2019, Defendants removed the action under relevant provisions of the Class Action Fairness Act ("CAFA") to this Court.  *See* Doc. No. 1.  On September 3, 2020, the parties attended and participated in settlement discussions at a mediation session with Marc Feder, Esq., an experienced professional mediator, and reached agreement on the material terms of a proposed individual and class action settlement that would fully resolve the dispute.  *See* Doc. Nos. 27, 33.

## OVERVIEW OF THE SETTLEMENT

The Settlement Class consists of all persons employed by Defendants in California

---

[1] Citations refers to the pagination assigned by the CM/ECF system unless otherwise indicated.

2

as non-exempt employees at any time during the Settlement Class Period (October 15, 2015 through October 3, 2020). *See* Doc. No. 49-2 at 35. There are 1894 Settlement Class Members with two opt-outs. *See* Doc. No. 52-3 at 3-4. Defendant will pay a total sum of $1.4 million (the "Gross Settlement Amount") in full settlement of all claims. *See* Doc. No. 49-2 at 32. The parties have agreed that no portion of the Gross Settlement Amount will revert to Defendant. *See id*. at 38.

After deductions for: (a) Court-approved attorneys' fees and costs to class counsel; (b) a $30,000 PAGA payment to the California LWDA; (c) Court-approved fees and costs of the Settlement Administrator; and (d) a Court-approved incentive award to Plaintiff, the resulting "Net Settlement Amount" will be distributed to the Settlement Class Members by way of individual settlement payments. *See id.* at 40-41. The payments will be pro rata shares of the Net Settlement Amount, based on the number of weeks a Settlement Class Member worked during the Class Period divided by the total number of weeks worked by all Settlement Class Members during the Class Period. *See id*. at 41.

The individual settlement payments are estimated to range from under a dollar to more than $1000, with Plaintiff receiving an individual settlement payment in the middle of that range. *See* Doc. No. 52-1 at 9-10. The Settlement Administrator's costs are approximately $14,000. *See* Doc. No. 52-3 at 5. Defendants joined Plaintiff's previous motion for preliminary approval of the Settlement and there are no objections to the Settlement. *See id*. at 4.

## FINAL APPROVAL OF CLASS SETTLEMENT

**A. Legal Standard**

> [T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

A court considers several factors in determining whether a Settlement Agreement is "fair, reasonable, and adequate" under Rule 23(e).  The Rule provides that a court should consider whether: (1) "the class representatives and class counsel have adequately represented the class"; (2) "the proposal was negotiated at arm's length"; (3) "the relief provided for the class is adequate," taking into consideration the risks associated with continued litigation, the effectiveness of distributing the proposed relief to the class, the terms of any proposed attorneys' fees, and the underlying settlement agreement; and (4) "the proposal treats class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2).

Judicial policy favors settlement in class actions and other complex litigation where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation.  *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  To that end, the Ninth Circuit has identified additional factors to consider, including: (1) the strength of the case; (2) "the risk, expense, complexity, and likely duration of further litigation"; (3) "the risk of maintaining class action status throughout the trial"; (4) the settlement amount; (5) the stage of the proceedings; (6) "the experience and views of counsel"; (7) whether there is a "governmental participant"; and (8) "the reaction of the class members to the proposed settlement."  *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (quoting *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003), *overruled in part on other grounds by Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571 (9th Cir. 2010)).

## B. Discussion

The Court proceeds by addressing Rule 23(e)(2)'s "fair, reasonable, and adequate" factors and the related factors noted by the Ninth Circuit.[2]

---

[2] Because of the overlap between the Rule 23(e)(2)'s factors and the Ninth Circuit's additional factors, the Court folds the Ninth Circuit's factors into its analysis of Rule 23(e)(2).

### 1. Adequate Representation

Rule 23(e)(2) requires the Court to consider whether "the class representatives and class counsel have adequately represented the class."  Fed. R. Civ. P. 23(e)(2)(A).  Relatedly, the Court also considers the experience and views of counsel.  *See Staton*, 327 F.3d at 959 (quoting *Molski*, 318 F.3d at 953).  "'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.  This is because '[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation.'"  *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (citation omitted) (first quoting *In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y.); and then quoting *In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)).

Here, Class Counsel includes David Spivak, an experienced trial attorney who has "been involved in the prosecution of numerous wage and hour class  actions  at  various stages  of  litigation."  Doc. No. 49-2 ("Spivak Decl.") ¶ 10.  Likewise, Walter Haines is a "highly experienced class action counsel" who has been "practicing law for over 40 years"  Doc. No. 49-3 ("Haines Decl.") ¶ 2.  Mr. Haines has "represented over 1,500 clients in wage and hour disputes of which more than 300 cases were class actions and/or representative actions with settlements totaling over $400,000,000."  *Id*.

Plaintiff, as Class Representative, has claims that "are typical for the purposes of certifying the Settlement Class.  Plaintiff, like absent Settlement Class Members was subject to the same relevant policies and procedures governing his compensation, hours of work, meal and rest periods, and expense reimbursement."  Doc. No. 39-2 at 7.  According to Plaintiff, he has "fairly represented the interests of all Settlement Class Members during the entire course of this case" and agreed "to settle the case in the best interest of the Settlement Class."  Doc. No. 49-4 ("Sengvong Decl.") ¶¶ 2, 6.

Based on their sworn declarations and the pertinent other portions of the record, the Court finds that both the Class Representative and Class Counsel have adequately

represented the Settlement Class Members and therefore this factor favors approval of the Settlement Agreement.

### 2. Arm's Length Negotiation

Rule 23(e)(2) requires the Court to consider whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). Courts must ensure settlements are not the product of collusion or other conflicts of interest. *See In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d at 947; *Staton*, 327 F.3d at 960. "A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *Nat'l Rural Telecommunications Coop.*, 221 F.R.D. at 528. The Ninth Circuit has outlined several circumstances that may indicate collusion:

> (1) "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded"; (2) "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds"; and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund."

*Ferrell v. Buckingham Prop. Mgmt.*, No. 1:19-cv-00332-LJO-SAB, 2020 WL 291042, at *20 (E.D. Cal. Jan. 21, 2020), *report and recommendation adopted*, 2020 WL 4364647 (E.D. Cal. July 30, 2020) (quoting *In re Bluetooth*, 654 F.3d at 947); *see also In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 569 (9th Cir. 2019) (noting these same "typical" collusive signs).

The parties reached this Settlement after engaging in significant informal discovery, participating in a Rule 26(f) conference, attending an Early Neutral Evaluation conference, participating in private mediation, and stipulating to settlement on terms proposed by mediator. Subject to the Court's ultimate disposition regarding the request for attorneys' fees, *infra*, Class Counsel will not recover an unreasonable portion of the Gross Settlement Amount and no portion of that fund will revert to Defendant. *See* Doc. No. 52-2 at 21. Accordingly, the Court finds that the arm's length negotiations favor approval of the Settlement Agreement.

### 3. Adequate Relief

Rule 23(e)(2) requires the Court to consider whether "the relief provided for the class is adequate" after assessing several factors, such as the risks associated with continued litigation, the effectiveness of proposed relief to the class, the terms of any proposed attorneys' fees, and the underlying settlement agreement.  Fed. R. Civ. P. 23(e)(2)(C).  To determine whether the relief is adequate and in assessing the other underlying subfactors, "the Court must balance the continuing risks of litigation (including the strengths and weaknesses of Plaintiffs' case), with the benefits afforded to members of the Class, and the immediacy and certainty of a substantial recovery." *Baker v. SeaWorld Entm't, Inc.*, No. 14-cv-02129-MMA-AGS, 2020 WL 4260712, at *6 (S.D. Cal. July 24, 2020).  In particular,

> [t]he Court shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation.  In this respect, "[i]t has been held proper to take the bird in hand instead of a prospective flock in the bush."

*Nat'l Rural Telecommunications Coop.*, 221 F.R.D. at 526 (quoting *Oppenlander v. Standard Oil Co. (Indiana)*, 64 F.R.D. 597, 624 (D. Colo. 1974)).

### i. Risks of Continued Litigation

"In determining whether to approve a Settlement Agreement, the Court should also consider the expense, complexity and likely duration of further litigation or delay of trial and appeal." *Baker*, 2020 WL 4260712, at *7 (citing Fed. R. Civ. P 23(e)(2)(C)(i)).  "Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 587 (N.D. Cal. 2015) (quoting *Ching v. Siemens Indus., Inc.*, No. 11-cv-04838-MEJ, 2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014)).

Here, if the parties had not settled, Plaintiff would have had to spend considerable time and effort litigating formal discovery, class certification, and summary judgment.  Accordingly, the Court finds that the strength of the case; the costs associated with trial

and appeal; the stage of the proceedings; and the risk of maintaining class action status throughout the trial favor approval of the Settlement Agreement.

### ii. Effectiveness of Proposed Relief Distribution

In determining the effectiveness of distributing the proposed relief to the class and the processing of class claims, the Court should "scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims. A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." Fed. R. Civ. P. 23(e) advisory committee's note to 2018 amendment.

In this case, the Notice of Settlement of Class Action provided as follows:

***How Do I Receive Money From This Settlement?***
Do nothing. If you do nothing, you will be entitled to your share of the Settlement based on the number of workweeks you worked for Defendants during the Settlement Class Period, and the number of pay periods you worked for Defendants during the PAGA Period, as stated below in Section 12. You also will be bound by the settlement, including the release of claims stated herein.

Kruckenberg Decl., Ex. A. This method of distribution imposes no burden on the Settlement Class Members. Accordingly, the effectiveness of the proposed method of distributing relief to the Class favors approval of the Settlement Agreement.

### iii. Terms of Proposed Attorneys' Fees

In assessing whether the relief for a class is adequate, "[e]xamination of the attorney-fee provisions may also be valuable in assessing the fairness of the proposed settlement." Fed. R. Civ. P. 23(e) advisory committee's note to 2018 amendment. "Ultimately, any award of attorney's fees must be evaluated under Rule 23(h), and no rigid limits exist for such awards. Nonetheless, the relief actually delivered to the class can be a significant factor in determining the appropriate fee award." *Id.*

This subfactor considers the "terms" of any proposed and agreed upon request for attorneys' fees. *See* Fed. R. Civ. P. 23(e)(C)(iii). Here, the Settlement Agreement

contains an attorneys' fees provision which permits Class Counsel to apply for an attorneys' fees award, which would be paid from the Gross Settlement Amount. *See* Doc. No. 52-2 at 20-21.  Class Counsel's entitlement to such award is ultimately contingent upon the corresponding motion for attorneys' fees and costs, which is addressed in detail below.

The Court must be mindful when determining whether to approve a proposed attorneys' fee award in the class action settlement context that "settlement class actions present unique due process concerns for absent class members." *Hanlon*, 150 F.3d at 1026.  Accordingly, "the district court has a fiduciary duty to look after the interests of those absent class members." *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015).  As the Ninth Circuit recently explained

> [C]ourts should scrutinize pre-class certification settlements because plaintiffs' counsel may collude with the defendant to strike a quick settlement without devoting substantial resources to the case. The potential for collusion reaches its apex pre-class certification because, among other things, (1) the court has not yet approved class counsel, who would owe a fiduciary duty to the class members; and (2) plaintiffs' counsel has not yet devoted substantial time and money to the case, and may be willing to cut a quick deal at the expense of class members' interests.
>
> In contrast, by the time a court has certified a class — the theory goes — the parties have vigorously litigated the dispute, reducing the chance that class counsel will settle on the cheap for a quick buck. By devoting substantial time and resources to the case, class counsel has skin in the game, guaranteeing his or her interest in maximizing the size of the settlement fund. Likewise, because a district court has appointed class counsel who owes a fiduciary duty to the class members, class counsel would be ethically forbidden from sacrificing the class members' interests.

*Briseño v. Henderson*, 998 F.3d 1014, 1024-25 (9th Cir. 2021) (internal citations omitted).

Here, the parties reached their settlement prior to class certification.  This requires the Court to take on the fiduciary role that would ordinarily fall to Class Counsel.  *See Allen*, 787 F.3d at 1223.  Upon review, the Court does not find any evidence of collusion

but the Settlement Agreement in this case does contain a "clear sailing" provision.  *See*
Doc. No. 52-2 at 21.  However, the parties also agreed that if the Court approves a lesser
attorneys' fee award, the difference will revert to the Net Settlement Amount and
therefore the Settlement Class, *see id.*, thus ameliorating the collusive concerns addressed
in *Briseño*.

### iv. Underlying Settlement Agreement

"It is well-settled law that a proposed settlement may be acceptable even though it
amounts to only a fraction of the potential recovery that might be available to the class
members at trial."  *Rodriguez v. Bumble Bee Foods, LLC*, No. 17-cv-2447-MMA
(WVG), 2018 WL 1920256, at *4 (S.D. Cal. Apr. 24, 2018) (brackets omitted) (quoting
*Nat'l Rural Telecommunications Coop.*, 221 F.R.D. at 527).  That is because a settlement
"embodies a compromise; in exchange for the saving of cost and elimination of risk, the
parties each give up something they might have won had they proceeded with litigation."
*Officers for Justice*, 688 F.2d at 624 (quoting *United States v. Armour & Co.*, 402 U.S.
673, 681 (1971)).  Further, the Ninth Circuit has held that the number of class members
who object to a proposed settlement is a factor to be considered.  *See Mandujano v. Basic
Vegetable Prod., Inc.*, 541 F.2d 832, 837 (9th Cir. 1976) (first citing *Bryan v. Pittsburgh
Plate Glass Co. (PPG Indus.)*, 494 F.2d 799, 803 (3d Cir. 1974); and then citing
*Amalgamated Meat Cutters & Butcher Workmen of N. Am., Local 340 v. Safeway Stores,
Inc.*, No. W-3915, 1972 WL 141, at *1 (D. Kan. Feb. 4, 1972)).  The absence of a large
number of objectors supports the fairness, reasonableness, and adequacy of the
settlement.  *See In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 175
(S.D.N.Y. 2000); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 624 (N.D. Cal. 1979) (finding
"persuasive" that 84% of the class filed no opposition).

Here, the Settlement Agreement provides for a Gross Settlement Amount of $1.4
million for 1894 Settlement Class Members and, after deducting various fees and costs,
"the average Individual Settlement Payment to Settlement Class Members is estimated to
be approximately $457.10."  Doc. No. 52-1 at 9-10 (citing Kruckenberg Decl. ¶ 11).

Only two Settlement Class Members have opted out of the settlement and no objections to the settlement terms have been received by either the attorneys, the Settlement Administrator, or the Court. *See* Kruckenberg Decl. ¶¶ 8-9. Plaintiff cites a number of cases which appear to support the conclusion that the Gross Settlement Amount in this case is both reasonable and favorable to the Settlement Class Members. *See* Doc. No. 52-1 at 9-10 (collecting cases). Accordingly, the Court finds that the underlying Settlement Agreement favors approval of the Settlement.

### v. Conclusion

Based on the foregoing, the Court finds that on balance the relief provided for the class is adequate and favors approval of the Settlement Agreement.

### 4. Equitable Treatment of Class Members

Rule 23(e)(2) requires the Court to consider whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e) advisory committee's note to 2018 amendment. In assessing this factor, courts determine whether the settlement unreasonably gives preferential treatment to the class representatives or other class members. *See Ferrell v. Buckingham Prop. Mgmt.*, 2020 WL 291042, at *23 (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)).

The Settlement Payments will be pro rata shares of the Net Settlement Amount, based on the number of weeks a Settlement Class Member worked during the Class Period divided by the total number of weeks worked by all Settlement Class Members during the Class Period. *See* Doc. No. 52-2 at 24. This is fair, reasonable, and adequate in light of the underlying harm and the lack of facts indicating certain Class Members suffered a disproportionate injury compared to others. Although disproportionate, as discussed below, the Court finds that Plaintiff's Class Representative Incentive Award is

reasonable.  Accordingly, the general equitable treatment of class members favors approval of the Settlement Agreement.

### C. Conclusion

Upon due consideration of the factors set forth above, the Court finds that the Class Settlement is on balance "fair, reasonable, and adequate" under Rule 23(e)(2) and **GRANTS** Plaintiff's motion for final approval of the settlement.

**ATTORNEYS' FEES AND COSTS**

Plaintiff seeks and award of attorneys' fees and costs pursuant to California Labor Code §§ 1194, 2699(g), 2802(c).  *See* Doc. No. 1-2 at 23, 25-26.  Plaintiff requests fees in the aggregate amount of $466,666, which is 33.33% of the $1.4 million Gross Settlement Amount.  *See* Doc. No. 49-1 at 10.

### A. Attorneys' Fees

#### 1. Legal Standard

Rule 23(h) of the Federal Rules of Civil Procedure provides that, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  And as mentioned above, in addition to the reasonableness inquiry mandated under Rule 23(h), "district courts must now consider 'the terms of any proposed award of attorney's fees' when determining whether 'the relief provided for the class is adequate'" pursuant to Rule 23(e).  *Briseño*, 998 F.3d at 1024 (quoting Fed. R. Civ. P. 23(e)(2)(C)(iii)).  Importantly, "whether the attorneys' fees come from a common fund or are otherwise paid, the district court must exercise its inherent authority to assure that the amount and mode of payment of attorneys' fees are fair and proper." *Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1328 (9th Cir. 1999).

The Court has discretion in a common fund case such as this to choose either the lodestar method or the percentage-of-the-fund method when calculating reasonable attorneys' fees.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Under the percentage-of-recovery method, 25% of a common fund is the benchmark for

12

fee awards. *See, e.g.*, *In re Bluetooth*, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure.").  Under the lodestar method, a "lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Id.* at 941 (citing *Staton*, 327 F.3d at 965).

Whether the Court awards the benchmark amount or some other rate, the award must be supported "by findings that take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048.  To guard against an unreasonable result, the Ninth Circuit has encouraged district courts to cross-check any calculations done in one method against those of another method.  *See id.* at 1050-51.

### 2. Discussion

As noted above, Plaintiff on behalf of Class Counsel requests $466,666 in fees, or one-third (33.33%) of the Gross Settlement Amount.  This amount exceeds the "benchmark" for a reasonable fee award under the percentage-of-recovery method.  *See, e.g.*, *Espinosa v. Ahearn (In re Hyundai & Kia Fuel Econ. Litig.)*, 926 F.3d 539, 570 (9th Cir. 2019) (noting the 25% benchmark).  As discussed below, it is also significantly more than Class Counsel's fees would be if calculated using the lodestar method and "[i]f the lodestar amount exceeds the 25% benchmark for percentage-of-recovery awards, a second look to evaluate the reasonableness of the lodestar calculation is appropriate." *Johnson v. MGM Holdings, Inc.*, 943 F.3d 1239, 1242 (9th Cir. 2019).

### a.  Lodestar Calculation

In order to determine the lodestar figure, the Court calculates the number of hours reasonably expended on the litigation and then multiplies that number by a reasonable hourly rate.  *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

The Court first considers whether Class Counsel's hourly rates are reasonable. A reasonable hourly rate is typically based upon the prevailing market rate in the

community for "similar work performed by attorneys of comparable skill, experience, and reputation." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1211 (9th Cir. 1986) (citing *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)).

Here, Plaintiff requests hourly rates of $700 for Mr. Spivak and $675 for Mr. Haines.  In addition to the declarations of counsel, the Court relies on its own knowledge and experience of customary rates concerning reasonable and proper fees, *see Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011), and considers the relevant *Kerr* factors. *See Davis v. City of San Francisco*, 976 F.2d 1536, 1546 (9th Cir. 1992) (finding that district courts may consider the *Kerr* factors in determining an appropriate market rate). Recently, courts in this District have awarded hourly rates for work performed in civil cases by attorneys with significant experience anywhere in range of $550 per hour to more than $1000 per hour.  *See, e.g.*, *Herring Networks, Inc. v. Maddow*, No. 3:19-cv-1713-BAS-AHG, 2021 U.S. Dist. LEXIS 23163, at *21 (S.D. Cal. Feb. 5, 2021) (finding $1150-$1050 to be reasonable rates for partners with more than 30 years of experience from a Top 100 law firm); *Kries v. City of San Diego*, No. 17-cv-1464-GPC-BGS, 2021 U.S. Dist. LEXIS 6826, at *26-27 (S.D. Cal. Jan. 13, 2021) (finding rates of $650 per hour for attorneys with more than 30 years of experience to be reasonable); *Sunbelt Rentals, Inc. v. Dubiel*, No. 20-cv-876-WQH-BGS, 2020 WL 6287462, at *2 (S.D. Cal. Oct. 27, 2020) (finding $405 rate per hour to be a reasonable rate for a partner in a breach of contract action); *Kailikole v. Palomar Cmty. Coll. Dist.*, No. 18-cv-2877-AJB-MSB, 2020 WL 6203097, at *3 (S.D. Cal. Oct. 22, 2020) (finding $550 rate per hour to be a reasonable rate for a partner in an employment action); *Vasquez v. Kraft Heinz Foods Co.*, No. 3:16-CV-2749-WQH-BLM, 2020 WL 1550234, at *1–2, 7 (S.D. Cal. Apr. 1, 2020) (approving of rates between $700 and $725 for attorneys with approximately 30 years of experience and rate of $550 for attorney with 12 years of experience); *San Diego Comic Convention v. Dan Farr Productions*, No. 14cv1865-AJB-JMA, 2019 WL 1599188, at *13-*14 (S.D. Cal. Apr. 15, 2019) (finding reasonable the hourly rates of $760 for partners from a Top 100 law firm with 28-29 years of experience), *attorney fees*

*aff'd* by 807 F. App'x 674 (9th Cir. Apr. 20, 2020); *Kikkert v. Berryhill*, No. 14cv1725-MMA-JMA, 2018 WL 3617268, at *2 n.1 (S.D. Cal. July 30, 2018) (an unopposed fee motion after a successful social security appeal, finding de facto hourly rate of $943 reasonable, citing other decisions in the district approving rates from $656 to $886). The rates requested by Messrs. Spivak and Haines are on the high end of what this Court finds reasonable but are nonetheless within the generally accepted range and reflective of the extensive experience both attorneys brought to the case.

Plaintiff also requests hourly rates for various legal secretaries, paralegals, and associates, all of whom performed work on this case. Those rates range from $450 per hour for an associate with seven years of experience to $150 per hour for first-year legal secretaries.[3] *See* Doc. No. 53 at 3-4. Although the associate billing rates are likewise on the high end of what this Court ordinarily finds reasonable, the requested rates are within the range supported by relevant caselaw; additionally, the hourly rate requested for work performed by paralegals and legal secretaries falls within the broad range of rates awarded by courts in this Districts. *See, e.g.*, *Kries*, 2021 U.S. Dist. LEXIS 6826, at *27 ($95); *Aispuro v. Ford Motor Co*., No. 18cv2045-DMS-KSC, 2020 U.S. Dist. LEXIS 142806, at *11 (S.D. Cal. Aug. 10, 2020) ($200); *Puccio v. Love*, No. 16cv2890-W-BGS, 2020 WL 434481, at *4 (S.D. Cal. Jan. 28, 2020) ($195); *San Diego Comic Convention*, 2019 WL 1599188, at *15 ($290).

The Court next considers whether Class Counsel's expenditure of 375.54 hours on this case is reasonable. "The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked." *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992) (citing *Hensley*, 461 U.S. at 433, 437). A district court "should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case." *Chaudhry*, 751 F.3d at 1111 (citing *Moreno*, 534 F.3d at 1112). However, the Court

---

[3] According to Mr. Spivak and as detailed in the billing records, the legal secretaries performed substantive duties similar to those performed by the paralegals thus rendering the titular difference between the employees unimportant.

"should exclude from [the] initial fee calculation hours that were not 'reasonably expended.'" *Hensley*, 461 U.S. at 434.  Hours are not "reasonably expended" if they are "excessive, redundant, or otherwise unnecessary." *Id.*

Class Counsel has provided detailed billing records which indicate that the hours of work performed on this case were generally reasonable, necessary, and thus compensable.  *See generally* Spivak Decl., Ex. F.  Of course, purely clerical work is not compensable at attorney or paralegal rates, *see Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989), and there are a few billing entries that appear to fall into the clerical category.  *See, e.g.*, Doc. No. 49-2 at 113 (billing entry of legal secretary indicating "calendared the new status conference date").  Those entries are the exception, however, and the Court finds a substantial majority of the billing entries reflective of compensable time spent on this litigation.  Moreover, "[t]he lodestar 'cross-check' need not be as exhaustive as a pure lodestar calculation" because it only "serves as a point of comparison by which to assess the reasonableness of a percentage award." *Fernandez v. Victoria Secret Stores, LLC*, No. CV 06-04149 MMM (SHx), 2008 U.S. Dist. LEXIS 123546, 2008 WL 8150856, at *14 (C.D. Cal. July 21, 2008).  Accordingly, "the lodestar can be approximate and still serve its purpose." *Id.*

Accordingly, finding the hourly rates identified above and hours expended to be reasonable, the Court agrees with Class Counsel's calculation of the lodestar figure in this case of $141,042.50.  *See* Doc. No. 53 at 4.

### b.  Lodestar Crosscheck

This Court has previously acknowledged that "California courts routinely award attorneys' fees of one-third of the common fund." *Espinosa v. Cal. Coll. of San Diego, Inc.*, No. 17cv744-MMA (BLM), 2018 U.S. Dist. LEXIS 60106, at *24 (S.D. Cal. Apr. 9, 2018) (quoting *Beaver v. Tarsadia Hotels*, No. 11-CV-01842-GPC-KSC, 2017 U.S. Dist. LEXIS 160214, 2017 WL 4310707, at *9 (S.D. Cal. Sept. 28, 2017)) (collecting cases).  But "[r]egardless of whether the Court uses the percentage approach or the lodestar method, the ultimate inquiry is whether the end result is *reasonable*." *Espinosa*, 2018

U.S. Dist. LEXIS 60106, at *27-28 (emphasis added) (citing *Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000)).  "Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award.  Where such investment is minimal, as in the case of an early settlement, the lodestar calculation may convince a court that a lower percentage is reasonable." *Vizcaino*, 290 F.3d at 1050.

"[A]n appropriate positive or negative multiplier reflect[s] . . . the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *In re Bluetooth*, 654 F.3d at 941-42 (quoting *Hanlon*, 150 F.3d at 1029).  Likewise, a "percentage amount can . . . be adjusted upward or downward to account for any unusual circumstances involved in this case." *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989).

The lodestar crosscheck does not support the requested fee award in this case.  The requested award of $466,666—33.33% of the Gross Settlement Amount—represents a performance multiplier of approximately 3.3 over the lodestar figure.  While "counsel are entitled to a multiplier for risk" in contingent-fee cases, such as this one, the Court finds that a multiplier of 3.3 is not warranted here and as such, a 33.33% fee award is not reasonable. *Vizcaino v. Microsoft Corp.*, 142 F. Supp. 2d 1299, 1306 (W.D. Wash. 2001).  Rather, in a case where "class counsel achieved for the class a pre-certification settlement after . . . engaging in significant discovery, and successfully negotiating a seven-figure settlement for the class," providing "an average award of $450 per class member," the 25% benchmark is more appropriate. *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 261 (N.D. Cal. 2015) (awarding attorneys' fees in the amount of 25% of common fund).

Accordingly, the Court finds that an appropriate fee award in this case is 25% of the Gross Settlement Amount, or a 2.5 performance multiplier of the lodestar figure, and will award Class Counsel $350,000 in attorneys' fees.

**B. Costs**

Plaintiff requests reimbursement for $8,581.33 in litigation costs expended by Class Counsel.

### 1. Legal Standard

Rule 23(h) of the Federal Rules of Civil Procedure provides that, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Counsel is entitled to reimbursement of the out-of-pocket costs they reasonably incurred investigating and prosecuting the case. *See In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996) (citing *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 391–92 (1970)); *see also Staton*, 327 F.3d at 974.

### 2. Discussion

Plaintiff seeks an award of costs totaling $8,581.33 expended by Class Counsel for filing fees, service fees, photocopying costs, postage, and other litigation related expenses. *See* Spivak Decl., Ex. G. The Court finds that upon review the requested award is reasonable in light of the itemized costs. Costs for service of process are taxable under 28 U.S.C. § 1920 as well as Civil Local Rule 54.1.b.1, which provides that "(c)osts for service of subpoenas are taxable as well as service of summonses and complaints." Filing fees are recoverable under 28 U.S.C. §1920(1). Additionally, the Ninth Circuit has held that an award to a prevailing party "can include reimbursement for out-of-pocket expenses including . . . travel, courier and copying costs." *Grove v. Wells Fargo Fin. Cal., Inc.*, 606 F.3d 577, 580 (9th Cir. 2010). Other recoverable expenses include expenses related to discovery and expenses related to computerized research. *See Harris v. Marhoefer*, 24 F.3d 16, 19-20 (9th Cir. 1994) (noting that "expenses related to discovery" are recoverable); *Trs. Of Constr. Indus. & Laborers' Health & Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253, 1258-59 (9th Cir. 2006) (holding that "reasonable charges for computerized research may be recovered.").

Accordingly, because Class Counsel's out-of-pocket costs were reasonably

incurred in litigating this action and were advanced by counsel for the benefit of the Class, the Court **APPROVES** reimbursement of litigation costs in the full amount requested.  *See, e.g.*, *Fontes v. Heritage Operating, L.P.*, No. 14-cv-1413-MMA (NLS), 2016 WL 1465158, at *6 (S.D. Cal. Apr. 14, 2016).

CLASS REPRESENTATIVE INCENTIVE AWARD

Finally, Plaintiff requests an incentive award of $15,000 for his service as the Class Representative in this action.

**A. Legal Standard**

"Incentive awards are payments to class representatives for their service to the class in bringing the lawsuit." *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013).  "Such awards are discretionary." *Rodriguez v. W. Publ'g Corp.* (*Rodriguez I*), 563 F.3d 948, 958 (9th Cir. 2009).  The Ninth Circuit has instructed district courts to "to scrutinize carefully the awards so that they do not undermine the adequacy of the class representatives." *See Radcliffe*, 715 F.3d at 1163.  Incentive awards that are disproportionate to the class's recovery risk a conflict of interest between a class representative's interests and the class's interests. *See id.* (quoting *Rodriguez I*, 563 F.3d at 959). This is especially relevant where retainer agreements require class counsel to request an incentive award or where the settlement agreement conditions the award on the class representatives' approval of the settlement. *See id.* at 1163–64. "Where . . . the class representatives face significantly different financial incentives than the rest of the class because of the conditional incentive awards that are built into the structure of the settlement, we cannot say that the representatives are adequate." *Id.* at 1165.

Additionally, in evaluating the reasonableness of incentive awards,

[t]he district court must evaluate their awards individually, using "relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation."

19

*Staton*, 327 F.3d at 977 (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

Further, "class members can certainly be repaid from any cost allotment for their substantiated litigation expenses." *Id.* Taken together, courts examine the following factors when scrutinizing incentive awards on an individual basis in class action settlements: (1) conflicts of interest between the class representative and the class in assessing the terms or disparity of an award, (2) actions taken by the class representative to protect the class's interest, (3) the benefit received by the class based on the class representative's actions, (4) the time and effort expended by the class representative, and (5) the class representative's reasonable fears of workplace retaliation.

**B. Discussion**

Pursuant to the Settlement Agreement

> Subject to Court approval and in exchange for Sengvong's release of all claims in the Personal Release, Sengvong's covenant not to sue (as described below), and in addition to his individual Settlement Award as a member of the Settlement Class, fifteen thousand dollars ($15,000) will be set aside from the Gross Settlement Amount for Sengvong's efforts in bringing and prosecuting this matter.

Doc. No. 49-2 at 37. The $15,000 incentive award as requested by Plaintiff in this case is at the high end of the range of such awards in this Circuit. However, after reviewing the declarations of both Class Counsel and Plaintiff, the Court agrees that a substantial incentive award is appropriate here in light of the time and effort Plaintiff expended on this litigation, the benefit obtained for the class, and the risks associated with bringing a class action lawsuit against a former employer.

Accordingly, the Court **APPROVES** Plaintiff's request for a $15,000 incentive award.

## CONCLUSION

Based on the foregoing, the Court **GRANTS** Plaintiff's motion for final approval of the class settlement and **GRANTS** in substantial part Plaintiff's motion for attorneys' fees, costs, and an incentive award.

The Court **CERTIFIES** the Settlement Class for the purposes of the Settlement. The Court **APPROVES** the Settlement as fair, reasonable, and adequate pursuant to Federal Rule of Civil Procedure 23(e).  The Court **ORDERS** the parties to undertake the obligations set forth in the Settlement Agreement that arise out of this Order.

The Court **AWARDS** attorneys' fees to Class Counsel in the amount of **$350,000** and costs in the amount of **$8,581.33.**

The Court further **AWARDS** to Plaintiff an incentive payment for work performed as the class representative in the amount of **$15,000**.

The Court **DIRECTS** the Clerk of Court to enter a separate judgment of dismissal in accordance herewith, *see* Fed. R. Civ. P. 58(a), and to close the case.

Without affecting the finality of this Order, the Court maintains jurisdiction over this matter for purpose of enforcing the Judgment.

**IT IS SO ORDERED**.

DATE: October 1, 2021

_____
HON. MICHAEL M. ANELLO
United States District Judge